ACCEPTED
01-15-00183-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/2/2015 5:32:40 PM
CHRISTOPHER PRINE
CLERK

# No. 01-15-00183-CR

In the
**Court of Appeals**
For the
**First District of Texas**
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

11/2/2015 5:32:40 PM

CHRISTOPHER A. PRINE
Clerk

⸻⸻◆⸻⸻

**No. 1437421**
In the 230th Criminal District Court
Of Harris County, Texas

⸻⸻◆⸻⸻

**ROY VASQUEZ**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

⸻⸻◆⸻⸻

STATE'S APPELLATE BRIEF

⸻⸻◆⸻⸻

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741

**SARAH ROBERTS MOSS**
**LISA CALLIGAN**
Assistant District Attorneys

1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 274-5826
Fax Number: (713) 755-5809
Hervey_Melissa@dao.hctx.net

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rules of Appellate Procedure 38.1(a) and 38.2(a)(1)(A), a complete list of the names of all interested parties, and the names and addresses of all trial and appellate counsel, is provided below:

*Counsel for the State:*

**Devon Anderson**—District Attorney of Harris County

**Melissa P. Hervey**—Assistant District Attorney on appeal

**Sarah Roberts Moss; Lisa Calligan**—Assistant District Attorneys at trial

Harris County District Attorney's Office
1201 Franklin Street, Suite 600
Houston, Texas 77002

*Appellant or Criminal Defendant:*

**Roy Vasquez**

*Counsel for Appellant:*

**Angela Cameron Williams**—Assistant Public Defender on appeal

Harris County Public Defender's Office
1201 Franklin Street, 13th Floor

i

Houston, Texas  77002

**Asha Reddi**—Defense Counsel at trial

14090 Southwest Freeway, Suite 300
Sugar Land, Texas  77478

**Grant Scheiner**—Defense Counsel at trial

2211 Norfolk Street, Suite 735
Houston, Texas  77098

*Trial Judge:*

**Honorable Brad Hart**—Presiding Judge of the 230th Criminal
District Court

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................i

IDENTIFICATION OF THE PARTIES ...................................................i

TABLE OF CONTENTS.................................................................. ii

INDEX OF AUTHORITIES.............................................................. iii

STATEMENT OF THE CASE............................................................1

STATEMENT OF FACTS ..............................................................1

SUMMARY OF THE ARGUMENT ....................................................4

REPLY TO APPELLANT'S SOLE POINT OF ERROR.........................................4

    *I.   PERTINENT FACTS* .........................................................5

    *II.  STANDARD OF REVIEW AND APPLICABLE LAW REGARDING
       ACCEPTABLE JURY ARGUMENT* .........................................10

*III. The Trial Court Properly Curtailed Defense Counsel's Jury Argument Regarding the Requirements of Sex-Offender Registration* ....................................................................11

*IV. Any Error by the Trial Court in Barring Defense Counsel's Closing Arguments about Sex-Offender Registration was Harmless* ...................................................................19

CONCLUSION AND PRAYER ........................................................22

CERTIFICATE OF COMPLIANCE ................................................23

CERTIFICATE OF SERVICE .........................................................24

## INDEX OF AUTHORITIES

**CASES**

*Apolinar v. State*,
106 S.W.3d 407 (Tex. App.—
Houston [1st Dist.] 2003),
*aff'd*, 155 S.W.3d 184 (Tex. Crim. App. 2005) .................................................21

*Borjan v. State*,
787 S.W.2d 53 (Tex. Crim. App. 1990)................................................. 12, 13, 17

*Burkett v. State*,
179 S.W.3d 18 (Tex. App.—
San Antonio 2005, no pet.).................................................................18

*Carmen v. State*,
358 S.W.3d 285 (Tex. App.—
Houston [1st Dist.] 2011, pet. ref'd) ....................................................10

*Corpus v. State*,
30 S.W.3d 35 (Tex. App.—
Houston [14th Dist.] 2000, pet. ref'd)................................................. 15, 16, 17

*Davis v. State*,
329 S.W.3d 798 (Tex. Crim. App. 2010)............................................10

*Everett v. State*,
707 S.W.2d 638 (Tex. Crim. App. 1986)..................................................................12

*Gomez v. State*,
35 S.W.3d 746 (Tex. App.—
Houston [1st Dist.] 2000, pet. ref'd) ...................................................................13

*Guidry v. State*,
9 S.W.3d 133 (Tex. Crim. App. 1999)....................................................................10

*Johnson v. State*,
698 S.W.2d 154 (Tex. Crim. App. 1985)................................................................19

*Lemos v. State*,
130 S.W.3d 888 (Tex. App.—
El Paso 2004, no pet.)................................................................................ 11, 19

*McGee v. State*,
774 S.W.2d 229 (Tex. Crim. App. 1989)................................................................11

*Montgomery v. State*,
810 S.W.2d 372 (Tex. Crim. App. 1990)................................................................10

*Mosley v. State*,
983 S.W.2d 249 (Tex. Crim. App. 1998)................................................................19

*Nzewi v. State*,
359 S.W.3d 829 (Tex. App.—
Houston [14th Dist.] 2012, pet. ref'd)...................................................................11

*Ortiz v. State*,
999 S.W.2d 600 (Tex. App.—
Houston [14th Dist.] 1999, no pet.)........................................................................12

*Requeno-Portillo v. State*,
No. 01-10-00242-CR, 2011 WL 3820747 (Tex. App.—
Houston [1st Dist.] Aug. 25, 2011, pet. ref'd) ............................................ 21, 22

*Rivas v. State*,
No. 02-08-00410-CR, 2011 WL 856930 (Tex. App.—
Fort Worth Mar. 9, 2011, pet. ref'd) ...................................................................21

*Snowden v. State*,
353 S.W.3d 815 (Tex. Crim. App. 2011)................................................................20

*State v. Britt*,
204 S.E. 817 (N.C. 1974) .....................................................................................17

*State v. Prestwood*,
   711 S.E.2d 875, 2011 WL 1467627 (N.C. Ct. App. Apr. 19, 2011, no pet.) 16, 17

*State v. Renteria*,
   977 S.W.2d 606 (Tex. Crim. App. 1998)...................................... 14, 15, 17

*Thomas v. State*,
   336 S.W.3d 703 (Tex. App.—
   Houston [1st Dist.] 2010, pet. ref'd) .......................................11

*Turner v. State*,
   87 S.W.3d 111 (Tex. Crim. App. 2002)...................................... 15, 16, 17

*Whiting v. State*,
   797 S.W.2d 45 (Tex. Crim. App. 1990).......................................11

*Wilder v. State*,
   560 S.W.2d 676 (Tex. Crim. App. 1978).......................................12

*Wilson v. State*,
   No. 01-13-00917-CR, 2015 WL 5042107 (Tex. App.—
   Houston [1st Dist.] Aug. 25, 2015, no. pet. h.) ................................ 11, 19, 20, 22

**STATUTES**

N.C. GEN.STAT. § 7A-97 (2009)........................................................17
TEX. PENAL CODE ANN. § 22.021(a).......................................................1

**RULES**

TEX. R. APP. P. 9.4(g)............................................................ i
TEX. R. APP. P. 9.4(i)...........................................................23
TEX. R. APP. P. 38.2(a)(1)(A)................................................... i
TEX. R. APP. P. 39.1............................................................ i
TEX. R. APP. P. 44.2(a).........................................................19

v

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

In cause number 1437421, the State charged appellant by indictment with aggravated sexual assault. (CR – 7); *see* TEX. PENAL CODE ANN. § 22.021(a).[1] A jury found appellant guilty of the lesser-included offense of sexual assault, and assessed appellant's punishment at confinement in the Texas Department of Criminal Justice, Correctional Institutions Division, for seventeen years and a fine of $10,000. (CR – 135, 147-49); (RR V – 121-22); (RR VII – 28-29). On February 12, 2015, the trial court sentenced appellant in accordance with the jury's verdict. (CR – 148-49); (RR VII – 29). The trial court certified appellant's right to appeal and, on February 17, 2015, appellant timely filed written notice of appeal. (CR – 151-52). Appellant did not file any post-trial motions. *See* (CR – 186).

◆

## STATEMENT OF FACTS

At approximately 6:00 AM on December 8, 2009, the complainant awakened to the sound of appellant, a complete stranger, opening the door to her bedroom and coming inside. (RR IV – 18-19, 56, 58-59, 62-63, 77). Appellant

---

[1] The Clerk's Record for appellant's cases consists of one volume and is hereinafter referenced as (CR – [page number]). The Reporter's Record consists of eight volumes, hereinafter referenced as (RR I-VIII – [page number]). Exhibits admitted by the trial court are contained in Volume VIII of the Reporter's Record and will be cited as ([SX or DX] – [exhibit number]). References to appellant's brief will be cited as (AB – [page number]).

demanded that the complainant give him all of her money and, moving to the complainant's bedside, grabbed a cell phone that was lying near the complainant's bed. (RR IV – 18-20). When the complainant told appellant that she didn't have any money, appellant grabbed her by her hair, looked at her face, told her she was pretty, and instructed her to take off her clothes and lay on her stomach on her bed. (RR IV – 20-21, 25-26). The complainant refused to undress, at which point appellant forcibly tore the complainant's shirt and pulled-down her pajama pants. (RR IV – 22-25). As the complainant cried and pleaded with appellant not to do anything to her, appellant penetrated the complainant's vagina with his fingers, and then penetrated the complainant's anus with his penis for "about five minutes" before ejaculating on the back of her legs. (RR IV – 26-29, 73).

When appellant withdrew from the complainant, she covered herself with a blanket and watched appellant root around her room and through her dresser-drawers, "looking...to see what else he could find to take." (RR IV – 30-31). As appellant was collecting items—specifically, the complainant's laptop computer and computer case; her Social Security card; and a ring—the complainant advised him that if she didn't go to her Houston Community College classes that morning, as she was scheduled to do, someone would come by her home looking for her. (RR IV – 31, 35-36, 38). Appellant told the complainant to call whoever was supposed to pick her up for school and the complainant complied, calling her older

2

sister. (RR IV – 36). Appellant then fled through the back door of the complainant's house, damaging the door in the process, and escaped through the yard. (RR IV – 38-39, 101-02, 112-13).

After waiting a few minutes to be sure that appellant was gone, the complainant dressed, ran into the street in front of her home, and flagged-down a passing motorist for help. (RR IV – 39-40, 68). The driver let the complainant call 911 with the driver's cell phone, and then waited with the complainant at the complainant's house until a police officer arrived. (RR IV – 40-42). Soon thereafter, emergency medical services personnel transported the complainant to the hospital, where a nurse examined the complainant and collected evidence of the sexual assault—including taking swabs of the complainant's vagina, anus, and the back of her legs. (RR IV – 42-43, 123-24, 138-39, 141-46).

In October 2012, nearly three years after the sexual assault occurred, the police developed appellant as a suspect through a CODIS "hit confirmation[,]" which linked appellant's DNA to the DNA obtained from the swabs taken of the complainant at the hospital. (CR – 10); (RR IV – 173-75, 196). In December 2012, the police assembled a photographic array which featured appellant's photograph, and presented the array to the complainant; the complainant selected two photographs, including the one of appellant. (RR IV – 180-82, 201). Then, in September 2013, the police obtained a buccal swab from appellant and submitted

the swab for forensic testing and comparison with the swabs taken from the complainant; the test results connected appellant to the sexual assault of the complainant with a high degree of certainty. (RR IV – 225-26, 261-64); *see* (SX – 30). Thereafter, on January 4, 2014, the police arrested appellant. (CR – 10).

———————◆———————

## SUMMARY OF THE ARGUMENT

The trial court properly prevented defense counsel from arguing to the jury during punishment-phase closing arguments about the requirements and burdens of sex-offender registration because, despite that counsel's proposed statements would have been legally correct, there was no direct or inferential evidence adduced at trial to support such assertions and, thus, counsel's statements about those collateral issues would have improperly interjected new matters for the jury's consideration.

———————◆———————

## REPLY TO APPELLANT'S SOLE POINT OF ERROR

Appellant argues in his only point of error that the trial court abused its discretion by prohibiting defense counsel from asserting to the jury, in closing argument in the punishment phase of trial, the fact that appellant will be subject to lifetime registration as a sex offender as a result of his conviction, and also several

4

particular aspects of the law regarding sex-offender registration, which effectively deprived appellant of his right to counsel.

## I. Pertinent Facts

Neither party introduced any evidence in either phase of trial regarding the fact that appellant would be subject to lifetime registration as a sex offender upon conviction, any of the specific requirements of sex-offender registration, such as the obligation to notify law enforcement before and after a change of address, or the potential penalties for violating the sex-offender registration requirements. Similarly, neither party, nor the trial court, mentioned during voir dire that sex-offender registration could be a collateral consequence of conviction in appellant's case. *See* (RR III – 4-120). Further, neither party sought, and the trial court did not include *sua sponte*, an instruction in the punishment-phase jury charge regarding the laws of sex-offender registration and, hence, none was given. *See* (CR – 140-47); (RR VII – 4). In closing argument in the punishment phase of trial, though, appellant's counsel sought to apprise the jury of the issues, requirements, and burdens of sex-offender registration, and encourage the jurors to consider such matters as mitigating circumstances when assessing appellant's punishment, shown as follows:

> [Defense counsel]: What does it mean to get convicted on a sexual assault case? What does it mean to [appellant] even before you assess punishment in this case? It means a lifetime of registration as a sexual

5

offender, basically until the day he dies. Every time he moves houses, he will be required to register -- pre-register seven days before.

[Prosecutor]: Objection, Your Honor.

This is all facts not in evidence.

[Trial Court]: Sustained. Please stay within the evidence.

[Defense Counsel]: Sexual registration will also require --

[Prosecutor]: Objection, Your Honor, this is facts not in evidence.

[Trial Court]: Sustained.

[Defense Counsel]: Employers do not hire sex offenders.

[Prosecution]: Objection, Your Honor, facts not in evidence.

[Defense Counsel]: Your Honor --

[Trial Court]: Overruled. I'll allow it.

[Defense Counsel]: Thank you, sir.

[Defense Counsel]: He will not be employable. He will have to find another way of making a living once he gets out of jail.

The prosecutors will argue that [the complainant's] life will never be the same. I submit to you, ladies and gentlemen, neither will [appellant's]. He will be labeled like a sex offender and be treated as one as long as he lives. Sex offenses are considered extremely serious offenses by the parole board. In my experience, he will pretty much have to serve out --

[Prosecutor]: Objection, Your Honor –

[Defense Counsel]: -- the sentence you give him.

[Prosecutor]: -- improper argument.

[Trial Court]: Sustained.

6

[Defense Counsel], please stay within what the evidence showed during the guilt/innocence and punishment phase of the trial and any reasonable inferences from those.

[Defense Counsel]: It's closing argument, Your Honor.

[Trial Court]: Yes, ma'am, it is closing argument. But you can't tell people things that are your personal opinion or what is in your experience that has not been shown by the evidence presented in this courtroom or that are reasonable inferences from those. Those are the rules. I didn't make them, but I'm going to enforce them.

...

[Defense Counsel]: Now, the range of punishment in a sexual assault case is two to 20 years in the Texas Department of Corrections. The prosecutor in her closing will suggest a number of years to you. She will probably ask you to max him out. I, on the other hand, will not suggest a number. I will ask you to give this punishment hearing the same attention to detail that you gave the guilt/innocence phase of this trial. I will ask you to consider his age. I will ask you to consider the mitigating facts, if any, that were raised during the trial. I will ask you to consider his life and his circumstance. Please also take into consideration his registration requirements.

Ladies and gentlemen, I implore you to please consider the lower end of the punishment range and give [appellant] a chance to be a productive member of society when he's released from jail. Thank you. (RR VII – 11-14).

Later, after the prosecutor's closing argument, and after the trial court released the jury to begin punishment deliberations, defense counsel made an offer of proof regarding her intended closing arguments concerning the law of sex-offender registration, shown as follows:

[Trial Court]: All right. Trial will be in recess until we hear from the jury.

7

[Defense Counsel]: Your Honor, I'd like to do an offer of proof, please.

[Trial Court]: Okay. On what?

[Defense Counsel]: On the closing argument, basically what I was prevented from telling the jury.

[Trial Court]: [Defense Counsel], you can -- you can read into the record what you want to tell the jury --

[Defense Counsel]: Yes, sir.

[Trial Court]: -- but it is quite clear, the law says you're only allowed to argue to a jury facts that are in evidence and reasonable inferences there from. There was no witness ever called that talked about sex offender registration, how long they would have to register as a sex offender, how much time they spend -- sex offenders spend in prison, any of those things. There was not any shred of evidence that was presented that allows you to argue that. And there's no reasonable inference that you can get to from that. And that was the reason I made my rulings that I did.

Now, if you want to read into the record what you were going to say, then you can do that. But I'm not going to sit here and listen to it all about stuff that's not presentable to a jury.

[Defense Counsel]: Your Honor -- if I may, Your Honor? I believe in closing arguments, you're allowed a great deal of latitude. It's a sex offense charge. And jury's [sic] are allowed to hear what happens to sex offenders.

[Trial Court]: If evidence is presented of that. You can't just get up there and say whatever you want to say about what happens, whether it's true or not. I'm not saying what you were going to say is not true. You're right. They do have to register as a sex offender.

[Defense Counsel]: Yes, sir.

8

[Trial Court]: Personal experience is never allowed. What a lawyer's personal experience is never allowed. And the jury would be allowed to hear that if evidence was presented of that. And I have seen that done, whether they call probation officers, other attorneys, whatever, to say what are the requirements for a person who's convicted of a sex offenses. That evidence is then in front of a jury. Then you can argue it. It was never presented in front of the jury.

[Defense Counsel]: I understand, Your Honor,

[Trial Court]: I mean, the charge says you are allowed to consider the evidence that was presented during the full presentation of this trial. You can't just get up and then say this is what's going to happen.

[Defense Counsel]: If I may read into the record, sir?

[Trial Court]: Go ahead.

[Defense Counsel]: Being a sex offender essentially means lifetime registration, basically until the day he dies. Every time he moves residences, he would be required to register. Before he moves -- seven days before he moves and seven days after the move. If he were to go somewhere for two days in three months, he has to report to the authorities of that city and county as well. And failure to comply with the registration requirements is another felony. And depending on the circumstances of that particular case, the range of punishment can be anywhere between 180 days to 20 years in prison for each violation.

Once he registers, the police will automatically be provided with his sex offender status upon request when they run a check on his driver's license or his license plate.

Additionally, the Texas Attorney General's Office authorizes local governments to broadcast information about registration of sex offenders to local cable television because it's public information. His name will also be on the Internet as a registered sex offender.

That's all I have, Your Honor.

9

[Trial Court]: All right. And again, I heard absolutely zero evidence of any of that information presented to this jury to allow them to consider that. And in my mind this -- allowing the defense to be able to say those things with no evidence being presented is almost -- even though all that may well be true, is almost the same thing as allowing the State to get up then and even though they did not present evidence of prior juvenile adjudications, which was given notice of, or misconduct in the jail, which they didn't present any evidence of -- to get up and say oh, yeah, by the way, he had all of this stuff, which is probably true. It's the same thing --

[Defense Counsel]: Your Honor, I also --

[Trial Court]: -- just for the record. (RR VII – 22-26).

## II. *Standard of Review and Applicable Law Regarding Acceptable Jury Argument*

Appellate courts review a trial court's ruling on the State's objection to the defendant's jury argument for abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). A trial court abuses its discretion only when the court's ruling is so clearly wrong that it falls outside of the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

Appropriate jury argument must fall within one of four general areas: (1) summation of the evidence introduced at trial; (2) reasonable deductions that may be drawn from the evidence; (3) responses to opposing counsel's arguments; or (4) a proper plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Carmen v. State*, 358 S.W.3d 285, 300 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). A trial court generally has broad discretion to control the

10

scope of closing argument, but may not prevent defense counsel from making a point that is essential to the defense. *Wilson v. State*, No. 01-13-00917-CR, 2015 WL 5042107, at *10 (Tex. App.—Houston [1st Dist.] Aug. 25, 2015, no. pet. h.); *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.). Prohibiting counsel from making such a jury argument denies the defendant of his right to counsel when the argument is one that the defendant was legally entitled to make. *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989); *Lemos*, 130 S.W.3d at 892. The defense has the legal right to argue any theory that is supported by the evidence in the case, or which may be inferred from the evidence, but may not misstate the law or make an argument that is contrary to the trial court's jury charge. *See Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990); *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Thomas v. State*, 336 S.W.3d 703, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Lemos*, 130 S.W.3d at 892.

### III. The Trial Court Properly Curtailed Defense Counsel's Jury Argument Regarding the Requirements of Sex-Offender Registration

The trial court properly prevented defense counsel from arguing to the jury about the requirements and perils of sex-offender registration—despite that counsel's comments were legally accurate and relevant—because such assertions exceeded the scope of appropriate jury argument, given the record in this case. Specifically, counsel's sex-offender-registration arguments were improper because

11

they would have interjected facts that were not introduced anywhere during appellant's trial, and law that was not included in the jury charge and, thus, would have been contrary the trial court's specific instruction in the jury charge regarding what the jurors could properly consider when assessing appellant's sentence:

> You are further instructed that in fixing [appellant's] punishment, which you will show in your verdict, you may take into consideration *all the facts shown by the evidence admitted before you in the full trial of this case and the law as submitted to you in this charge*." (CR – 144).

The law is clear that neither the State nor the defense may use closing argument to get evidence before the jury which is outside of the record, and which is not inferable from the evidence, and, in doing so direct or encourage the jury to determine the defendant's punishment based on improperly-interjected collateral matters. *See Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (explaining that it is improper to use closing argument to interject facts which were neither in evidence nor inferable from the evidence because "[t]he effect of such argument is to ask to the jury to determine the punishment of the accused based on collateral matters....") (citing *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986)); *Ortiz v. State*, 999 S.W.2d 600, 605 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (asserting that argument which interjects matters not in the record, or which invites the jury to speculate on matters not in the record, is improper); *see also Wilder v. State*, 560 S.W.2d 676, 678 (Tex. Crim. App. 1978)

(stating that defense counsel's argument which is not supported by the record is improper). An exception to this rule against arguing facts outside of the evidence adduced at trial exists only when a party's statements concern common knowledge. *See Gomez v. State*, 35 S.W.3d 746, 748 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("Statements of common knowledge are an exception to the rule against arguing facts outside the evidence."). Otherwise, when the matters at issue are not of common knowledge, the general rule applies and a party may not argue the subject absent direct or inferential evidentiary support for the party's statements. *See Borjan*, 787 S.W.2d at 57; *Gomez*, 35 S.W.3d at 748.

Contrary to these principles, appellant proposes that, even though there was no evidence adduced at any point in appellant's trial concerning the general and particular requirements of sex-offender registration—which are not matters of common knowledge—and there was no jury instruction concerning such issues, defense counsel should have been free to argue those matters to the jury simply because counsel's statements were accurate recitations of the law. (AB – 16-23). In doing so, appellant encourages this Court to adopt a rule that any party can argue any collateral matter to the jury so long as the statements concerning those matters are legally correct, regardless of whether there is any direct or inferable evidence in the record to support such arguments. *See* (AB – 22-23).

In support of his proposition, appellant relies on *State v. Renteria*, 977 S.W.2d 606 (Tex. Crim. App. 1998), wherein the Texas Court of Criminal Appeals held that "[t]here is no error in correctly arguing the law, even if the law is not included in the court's charge." *Renteria*, 977 S.W.2d at 608. While the holding of *Renteria* is certainly true, appellant's suggested rule cannot be extrapolated from it as appellant supposes, given the differences between appellant's case and *Renteria*. In *Renteria*, the State produced evidence that Renteria was part of a group of people who beat the victim and then killed him by running him over with a vehicle several times. *Renteria*, 977 S.W.2d at 607. The abstract portion of the guilt-phase jury charge included an instruction on the law of criminal responsibility as a party, but the subsequent application paragraph of the charge did not apply the law of parties to the facts of Renteria's case. *Id.* Notwithstanding that omission, the State asserted in closing argument that the jury could find Renteria guilty as a party to the victim's murder. *Renteria*, 977 S.W.2d at 607. Renteria objected to the State's argument, contending that it permitted the State to urge a theory of criminal responsibility that was not properly included in the jury charge, but the trial court overruled the objection. *Id.* The Eighth Court of Appeals at El Paso reversed the trial court's ruling, finding that the issue of Renteria's criminal culpability as a party was not properly before the jury and, thus, that the trial court erred by permitting the State to argue that theory of liability to the jury. *Renteria*,

14

977 S.W.2d at 607-08. The Court of Criminal Appeals disagreed, however, holding that the prosecution properly argued the parties issue to the jury, despite the absence of a parties instruction in the application paragraph of the jury charge. *Renteria*, 977 S.W.2d at 608.

Unlike in appellant's case, in *Renteria* there were facts developed at trial regarding the complained-of jury argument—Renteria's party-liability—and the jury charge included at least some instruction regarding the matter—a parties instruction in the abstract portion of the charge. *See Renteria*, 977 S.W.2d at 607-08. Thus, because *Renteria* featured evidentiary facts and a jury instruction regarding the law of parties, the prosecution could properly assert the parties theory of culpability to the jury in closing arguments, despite that that law was not applied in the jury charge through an application paragraph. *Id.* When viewed in context then, it is apparent that the holding of *Renteria* does not support appellant's position; rather, *Renteria* demonstrates that, in accordance with the rules regarding the proper scope of jury argument, before appellant could rightly have asserted the various aspects of sex-offender registration to the jury in closing arguments, some party would have to have presented some evidence at trial regarding such matters, or some instruction to that effect would have to have been given in the jury charge.

Similarly, *Turner v. State*, 87 S.W.3d 111 (Tex. Crim. App. 2002), and *Corpus v. State*, 30 S.W.3d 35 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)

15

also cited by appellant, are distinguishable from the situation in appellant's case for the same reasons: in both cases, the record contained facts in support of the legally-correct closing argument advanced to the jury, despite that there was no jury instruction on the matter. *See Turner*, 87 S.W.3d at 117-18 (finding the prosecution's argument that the law required the jury to consider the defendant's self-defense claim from the standpoint of an "ordinary and prudent person" and not from the standpoint of a "psychopath or a sociopath" to be "proper because it did not misstate self-defense law *and also because evidence was presented at guilt/innocence that supports a finding that [the defendant] is a psychopath and a sociopath*.") (emphasis added); *Corpus*, 30 S.W.3d at 41-42 (finding the prosecution's joint-possession jury argument proper because "the State *proved* an affirmative link between [the defendant] and the firearm sufficient to establish a reasonable inference that [the defendant] knew of the firearm's existence and tis whereabouts and that he exercised control over it.") (emphasis added).

Appellant also cites *State v. Prestwood*, 711 S.E.2d 875, 2011 WL 1467627 (N.C. Ct. App. Apr. 19, 2011, no pet.) (not designated for publication), from North Carolina, in support of his argument. In *Prestwood*, a jury found the defendant guilty of three counts of sexual battery, and the defendant's sole point of error on appeal, like here, was that the trial court erred in prohibiting defense counsel from arguing to the jury the statutorily-required consequences of a sexual battery

16

conviction, including mandatory registration as a sex-offender. *Prestwood*, 2011 WL 1467627, at *2-3. The appellate court in *Prestwood* agreed, relying on North Carolina law which permits counsel to "read or state to the jury a statute or other rule of law relevant to such case, including the statutory provision fixing the punishment for the offense charged." *Prestwood*, 2011 WL 1467627, at *3 (citing *State v. Britt*, 204 S.E. 817, 828-89 (N.C. 1974)); *see* N.C. GEN.STAT. § 7A-97 (2009) ("In jury trial the whole case as well of law as of fact may be argued to the jury.").

Although *Prestwood* is similar to appellant's situation, factually, it is distinguishable and unpersuasive, legally, given the facts that it is an unpublished opinion from another state, and that its holding relies upon a statute which conflicts with the law in Texas that a party may argue a legally-correct statement of the law to the jury only when there is some direct or inferential evidentiary basis to support the statement. *Compare Prestwood*, 2011 WL 1467627, at *3 (ostensibly not requiring any foundational evidentiary support for counsel to argue any legally-correct statement of law to the jury) *with Borjan*, 787 S.W.2d at 57 (prohibiting counsel from arguing any collateral matter to the jury which is not supported by evidence in the record); *see also Turner*, 87 S.W.3d at 117-18; *Renteria*, 977 S.W.2d at 607-08; *Corpus*, 30 S.W.3d at 41-42.

If this Court were to accept appellant's argument, this Court's ruling would not only exceed the bounds of existing Texas precedent, but would also pave the way for any party to be able to freely argue to the jury any technically legally-correct aspect of a criminal conviction, regardless of whether the subject is supported by anything in the record, and regardless of how remote or collateral to the issues that the jury actually must consider the argument may be—a concept which has been rejected in such cases as *Burkett v. State*, 179 S.W.3d 18, 30-31 (Tex. App.—San Antonio 2005, no pet.) (affirming that the prosecutor's closing argument that "when a defendant goes to prison, he's going to receive all the free medical care he likes" was improper because it was outside of the record, despite that it was an accurate assessment of one of the myriad consequences of a criminal conviction and prison sentence). Thus, this Court should instead abide by established precedent, which not only prohibits counsel from interjecting collateral, unsubstantiated matters during jury argument, but also preserves the trial court's gatekeeping responsibilities to assess the appropriate scope and nature of evidence before it is presented to the jury.

Accordingly, under the circumstances in this case, where there was no direct or inferential evidence offered regarding any of the particular aspects of sex-offender registration that appellant's counsel sought to argue, and there was no instruction pertaining to such laws in the jury charge, the trial court properly barred

appellant's counsel from arguing to the jury about such matters. This Court should overrule appellant's sole point of error.

## IV. *Any Error by the Trial Court in Barring Defense Counsel's Closing Arguments about Sex-Offender Registration was Harmless*

A trial court's erroneous denial of a defendant's jury argument can constitute a denial of the right to counsel. *Johnson v. State*, 698 S.W.2d 154, 166 (Tex. Crim. App. 1985); *Lemos*, 130 S.W.3d at 892. And because the denial of the right to counsel is an error of constitutional magnitude, the trial court's improper restriction of jury argument is reviewed for harm under the constitutional-error standard of Texas Rule of Appellate Procedure 44.2(a). *Wilson*, 2015 WL 5042107, at *10; *Lemos*, 130 S.W.3d at 892-93. Under Rule 44.2(a), an appellate court "must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *Wilson*, 2015 WL 5042107, at *10. In other words, the paramount question of the constitutional harmless-error test is whether there is a reasonable possibility that the error might have contributed to the defendant's conviction or punishment. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *Wilson*, 2015 WL 5042107, at *10. In making this assessment, a reviewing court evaluates the entire record in a neutral manner and considers such non-exhaustive factors as the nature of the error, the extent to which the State emphasized the error, the probably collateral implications

19

of the error, and the weight which a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011); *Wilson*, 2015 WL 5042107, at *10.

In this case, the trial court's error, if any, in preventing defense counsel from arguing to the jury about the various aspects of sex-offender registration was harmless beyond a reasonable doubt, in light of the entirety of the record and the above-listed factors. First, the nature of the supposed error was not egregious, given that the court's ruling did not deprive appellant of the opportunity to present a vital defense or mitigating fact. Second, even assuming that counsel's sex-offender-registration arguments were critical to appellant's strategy for the punishment phase, counsel effectively communicated those points to the jury because the State did not move the trial court to instruct the jury to disregard counsel's comments to that effect, and because the State did not object to appellant's final plea for the jury to "[p]lease also take into consideration [appellant's] registration requirements" when assessing appellant's punishment. (RR VII – 11-14). *See Wilson*, 2015 WL 5042107, at *11 (finding the erroneous limitation of defense counsel's closing argument harmless beyond a reasonable doubt when, among other considerations, the State objected to counsel's statements after counsel had already said them and "the trial court merely sustained the State's objections; it did not instruct the jury to disregard the argument."); *Requeno-*

20

*Portillo v. State*, No. 01-10-00242-CR, 2011 WL 3820747, at *5 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, pet. ref'd) (mem. op., not designated for publication) (finding the improper limitation of defense counsel's closing argument harmless beyond a reasonable doubt when the trial court did not instruct the jury to disregard counsel's statements and counsel made the same assertions elsewhere in his closing argument without objection); *Rivas v. State*, No. 02-08-00410-CR, 2011 WL 856930, at *3 (Tex. App.—Fort Worth Mar. 9, 2011, pet. ref'd) (mem. op., not designated for publication) (same). And lastly, there is no reasonable probability that the absence of further jury argument concerning the requirements and hazards of sex-offender registration contributed to appellant's punishment because the jury—having already acquitted appellant of the charged, greater offense of aggravated sexual assault—specifically declined to give appellant the maximum prison sentence, despite the prosecution's ardent argument for it. (RR VII – 21-22); *see generally Apolinar v. State*, 106 S.W.3d 407, 415 (Tex. App.—Houston [1st Dist.] 2003) (considering, when assessing harm following a trial court's error, the fact that the jury assessed punishment below the maximum term statutorily permitted), *aff'd*, 155 S.W.3d 184 (Tex. Crim. App. 2005).

Accordingly, any error committed by the trial court in barring defense counsel from further arguing to the jury about sex-offender registration was harmless beyond a reasonable doubt, and this Court should overrule appellant's

21

only point of error in its entirety.  *See Wilson*, 2015 WL 5042107, at \*11; *Requeno-Portillo*, No. 01-10-00242-CR, 2011 WL 3820747, at \*5.

———————◆———————

## CONCLUSION AND PRAYER

For the foregoing reasons, the State respectfully submits that the trial court did not abuse its discretion by prohibiting defense counsel from arguing to the jury during punishment-phase closing arguments about sex-offender registration.  Thus, the State respectfully prays that this Court will overrule appellant's sole point of error, and will affirm appellant's conviction and sentence.

Respectfully submitted,


**DEVON ANDERSON**
District Attorney
Harris County, Texas

**/s/** *Melissa Hervey*

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number:  24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 274-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

# CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), the undersigned attorney certifies that there are 5,202 words in the foregoing computer-generated document, based upon the representation provided by Microsoft Word, the word processing program that was used to create the document, and excluding the portions of the document exempted by Rule 9.4(i)(1).

/s/ *Melissa Hervey*

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 274-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that the undersigned counsel has directed the e-filing system eFile.TXCourts.gov to serve a true and correct copy of the foregoing document to Angela Cameron Williams, appellant's attorney of record on appeal, on November 2, 2015, at the following e-mail address, through the electronic service system provided by eFile.TXCourts.gov:

Angela.Cameron@pdo.hctx.net

/s/ *Melissa Hervey*

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number:  24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 274-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net